UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LARRY B. MERRITT,

     Plaintiff,

v.                                                          Case No.  3:16cv412-LC-CJK

M. STOKES, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This prisoner civil rights case, filed under 42 U.S.C. § 1983, is before the court on defendants Layton, Stokes and Brennan's motion for summary judgment and evidentiary materials.  (Doc. 91 (Brennan's motion and evidentiary materials (Exhibits A-H, J and L)); Doc. 97 (order authorizing Layton and Stokes' joinder in Brennan's motion); Doc. 103 (evidentiary materials filed under seal (Exhibits I and K))).  Plaintiff Merritt responded in opposition.  (Doc. 102).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  The undersigned concludes that the summary judgment motion should be granted in part and denied in part.  The undersigned further concludes that the claims against the remaining defendant, Timothy Arrant, should be dismissed without prejudice for failure to timely serve.

BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Larry Merritt ("Merritt") is an inmate of the Florida penal system currently confined at Columbia Correctional Institution.  Merritt was confined at Santa Rosa Correctional Institution ("Santa Rosa CI") at the time of the events giving rise to this lawsuit.  Merritt sues four prison officials at Santa Rosa CI in their individual capacities:  Sergeant Marcus Stokes, Officer Jon Layton, Officer Christopher Brennan and Officer Timothy Arrant.  Merritt claims that on August 24, 2014, the defendants used excessive force on him and that Stokes' and Brennan's actions were retaliatory.   As relief, Merritt seeks compensatory and punitive damages.  (Doc. 1).  Stokes, Layton and Brennan move for summary judgment on three bases: (1) Merritt fails to demonstrate a Fourteenth Amendment violation; (2) defendants are entitled to qualified immunity; and (3) Merritt is not entitled to damages.  (Doc. 91).

DISMISSAL OF MERRITT'S CLAIMS AGAINST DEFENDANT ARRANT

Defendant Timothy Arrant has not been served during the 2-year pendency of this case.  Under Rule 4(m), a district court is authorized to dismiss an action without prejudice for failure to serve the summons and complaint within 120 days of the complaint's filing, unless good cause is shown for the delay.  *See* Fed. R. Civ. P. 4(m); *see also Rance v. Rocksolid Granit USA, Inc*., 583 F.3d 1284 (11th Cir. 2009).

If good cause is shown, the court is required to extend the time for service.  *See* Fed. R. Civ. P. 4(m); *Rance, supra*.

For prisoners proceeding *in forma pauperis*, "[t]he officers of the court shall issue and serve all process." 28 U.S.C. § 1915(d).  "[T]he failure of the United States Marshal to effectuate service on behalf of an *in forma pauperis* plaintiff through no fault of that plaintiff constitutes 'good cause' for the plaintiff's failure to effect timely service within the meaning of Rule 4(m)."  *Rance* at 1288.  In the case where the *in forma pauperis* plaintiff is a *pro se* prisoner, the Eleventh Circuit held:

> It is unreasonable to expect incarcerated and unrepresented prisoner-litigants to provide the current addresses of prison-guard defendants who no longer work at the prison.  Thus, . . . as long as the court-appointed agent can locate the prison-guard defendant with reasonable effort, prisoner-litigants who provide enough information to identify the prison-guard defendant have established good cause for Rule 4(m) purposes.

*Richardson v. Johnson*, 598 F.3d 734, 739-40 (11th Cir. 2010); *see also Fowler v. Jones*, 899 F.2d 1088, 1095-96 (11th Cir. 1990) (holding that prisoner-litigant proceeding *in forma pauperis* was not at fault for failure to effect timely service when he acted reasonably by requesting service on the appropriate defendant and attempting to remedy any service defects he knew about).

Merritt filed his complaint on August 15, 2016, and, after being granted leave to proceed *in forma pauperis*, submitted service copies on December 19, 2016. (Docs. 1, 4).  On December 29, 2016, the court directed the United States Marshals Service ("USMS") to serve the four defendants through the special process server at Santa Rosa CI.  (Doc. 8).  Service was not executed on defendant Timothy Arrant because he "no longer works at Santa Rosa CI".  (Doc. 12).

On March 17, 2017, the court requested the assistance of the Florida Department of Corrections' Office of General Counsel in identifying a service address for Arrant.  (Doc. 16).  The court directed the General Counsel's Office to (1) inform the court of an institutional address for Arrant so the court could specially appoint a process server to effect service at that institution, (2) inform the United States Marshal in confidence of a non-institutional or home addresses for service, (3) enter an appearance on behalf of Arrant, or (4) advise the court that none of the foregoing alternatives was possible.  (*Id*.).

Assistant General Counsel responded on May 1, 2017, that the last known home address for defendant Arrant was provided to the USMS in confidence.  (Doc. 20).  The USMS attempted service on Arrant at the confidential address and filed a service return on June 12, 2017.  (Doc. 26).  The service return certifies that Arrant could not be located at the confidential address for this reason: "6/2/17 Spoke

w/owner of property, Mr. Morris. Def't Arrant was evicted. No FFD address available." (Doc. 26).

The undersigned entered an order on June 15, 2017, finding that the court and USMS made reasonable efforts to locate defendant Arrant, without success. (Doc. 28). The court advised Merritt that unless he provided specific information leading to a service address for Arrant, his claims against that defendant would be dismissed without prejudice under Rule 4(m). (Doc. 28). The order directed:

> Plaintiff has **14 days** from the date of this order to show cause why his claims against defendant Timothy Arrant should not be dismissed without prejudice for failure to timely effect service under Rule 4(m). To avoid dismissal, plaintiff's show cause response must provide an alternative address for defendant Arrant or other specific information as to Arrant's whereabouts. Plaintiff's failure to timely respond to this order will result in a recommendation that his claims against Arrant be dismissed without prejudice.

(Doc. 28, p. 2).

Over 18 months have passed since issuance of the show cause order, and Merritt has not provided an alternative address for defendant Arrant or other specific information concerning his whereabouts. Arrant's whereabouts remain unknown. Merritt has not shown good cause to further extend the time for service. Merritt's claims against defendant Timothy Arrant should be dismissed without prejudice under Rule 4(m).

## SUMMARY JUDGMENT ANALYSIS FOR MERRITT'S CLAIMS AGAINST STOKES, LAYTON AND BRENNAN

Merritt raises claims under the First, Eighth and Fourteenth Amendments as well as state and federal criminal laws. The following facts are drawn from the evidence in the summary judgment record (docs. 91, 103), and from those allegations of Merritt's verified complaint and accompanying declaration (doc. 1), which may be considered on summary judgment.[1] The facts pertain only to Merritt's claims against defendants Stokes, Layton and Brennan. Where the parties offer conflicting accounts of the events in question, the court "sets forth the facts, drawn from the evidence presented, in the light most favorable to the plaintiff." *See Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1265 (11th Cir. 2005). Matters stated below as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

---

[1] "A *pro se* plaintiff's complaint, . . . if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. Nevertheless, '[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge.'" *Howard v. Memnon*, 572 F. App'x 692, 694 (11th Cir. 2014) (*citing Murrell v. Bennett*, 615 F.2d 306, 310 n.5 (5th Cir. 1980), *and quoting* Fed. R. Civ. P. 56(c)(4)) (footnote omitted). This statement of facts does not include factual statements made in Merritt's summary judgment response (doc. 102), because the response is neither verified under 28 U.S.C. § 1746, nor sworn under oath under penalty of perjury. *See Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (holding that district court properly declined to consider unsworn affidavit filed in support of § 1983 plaintiff's motion to alter or amend judgment).

Facts

On August 17, 2014, Merritt was placed in disciplinary confinement based on several disciplinary convictions. (Doc. 91, Exs. B-D). Merritt was given a total of 75 consecutive days of disciplinary confinement for the convictions. (*Id*.).

On the afternoon of August 24, 2014, Merritt was housed in F dorm, cell 2101. (Doc. 1, Compl., Statement of Facts ¶ 3). Merritt was upset that he was denied a meal earlier that day and days prior, so he covered his cell door window with a pillowcase. (*Id*., ¶¶ 4, 5, 14). At approximately 4:36 p.m., defendant Sergeant Stokes ("Stokes") observed that Merritt's cell window was covered. (*Id*., ¶ 5; *see also* Doc. 91, Ex. G, Stokes Decl. ¶ 3). Stokes beat on Merritt's cell door, called out to him and ordered him to remove the obstruction from the window. (*Id*.). Merritt ignored Stokes. (*Id*.). Stokes radioed that he had a "non-respondent" and received permission to enter Merritt's cell. (Doc. 1, Compl., Statement of Facts ¶ 6). Stokes directed defendant Christopher Brennan ("Brennan") to retrieve a non-electric concave Plexiglass shield. (Doc. 1, Compl., Statement of Facts ¶ 6; Doc. 91, Ex. G, Stokes Decl. ¶ 3).

At approximately 4:37 p.m., Stokes again ordered Merritt to uncover his window and, again, Merritt declined to respond. (Doc. 91, Ex. G, Stokes Decl. ¶ 4). At 4:40 p.m., Stokes, Brennan, Arrant and defendant Jon Layton ("Layton")

breached Merritt's cell door to conduct a life safety check due to Merritt's lack of response.  (Doc. 1, Compl., Statement of Facts ¶ 7; Doc. 91, Ex. G, Stokes Decl. ¶ 4 and Ex. F, Layton Decl. ¶ 4).

Merritt, in the meantime, had positioned himself on his knees at the cell door.  (Doc. 1, Compl., Statement of Facts ¶ 7).  When the door opened, Merritt lunged through the doorway and flattened himself on the floor.  (Doc. 1, Compl., Statement of Facts ¶ 7; Doc. 91, Ex. G, Stokes Decl. ¶ 4 and Ex. F, Layton Decl. ¶ 4; Doc. 103, Ex. I at 16:39:45 – 16:40:32).[2]  Arrant used the shield to stop Merritt's lunge while also ordering Merritt to cease his behavior.  (Doc. 91, Ex. G, Stokes Decl. ¶ 4 and Ex. F, Layton Decl. ¶ 4).  Brennan and Arrant secured Merritt's legs with leg irons and attempted to pull Merritt back into the cell by his legs, but Merritt's arm caught outside the door and made it difficult to pull him inside.  (Doc. 1, Compl., Statement of Facts ¶ 8).  Stokes and Layton then lifted Merritt and moved him inside the cell.  (*Id*. ¶ 9).  Once inside, Layton and Arrant began elbowing Merritt and punching and

---

[2] Doc. 103, Ex. I, filed under seal, is a DVD containing four video clips (without audio) from fixed-wing cameras.  The only clip that reflects the cell door breach and entry is the second clip.  (Doc. 103, Ex. I, 0824 merritt# 2.pns).  That clip is from a fixed-wing camera positioned high on a wall outside Merritt's cell.  The clip depicts the outside of Merritt's cell door (and other doors) from a side view, several feet away.  The video depicts, with little clarity and no close-up detail, the defendants breaching Merritt's cell door, crouching down to get a hold of him, and moving him back inside the cell.  (Doc. 103, Ex. I, 0824 merritt# 2.pns at 16:39:45 through 16:40:32).  None of the video clips capture events inside Merritt's cell.

kneeing him in the back, legs and arms while Stokes and Brennan secured Merritt's hands with handcuffs.  (*Id*. ¶ 10).  After Merritt was cuffed, Layton said, "'Whip his ass'" and Arrant agreed.  (Doc. 1, Compl., Statement of Facts ¶ 11).  Layton and Arrant then "beat and assault[ed]" Merritt while Stokes and Brennan held Merritt to the floor.  (*Id*. ¶¶ 11-12).  Merritt states that "at no time" did he "resist or bec[o]me combative, nor did Plaintiff say anything to provoke these defendants on further . . . ."  (*Id*. ¶ 13).  Merritt contends that any force used inside the cell was excessive, "as Plaintiff was in restraints from the time of being dragged back into the cell . . . ."  (*Id*. ¶ 18).  As a result of Layton's and Arrant's beating, Merritt "suffered cuts and abrasions to his arms, legs, chest, back and stomach, severe pain and suffering, emotional and mental distress, and humiliation and degradation."  (*Id*. ¶ 15).

Merritt was taken to the medical department for a post-use-of-force examination.  (Doc. 91, Ex. E, pp. 3-4).  Merritt had one small superficial abrasion on his right shoulder blade, and a "pink area – superficial dermis 4 x 5 possible firm grip" on the back of his left upper arm.  (*Id*.).  Merritt's injuries did not require medical treatment.  (*Id*.).  Merritt was instructed to follow up through the sick call procedure if needed.  (*Id*.).

After the incident, a use of force report was prepared and submitted to supervisory officials at Santa Rosa CI and, later, the Inspector General's Office.

(Doc. 91, Ex. E).  After considering statements from the officers and Merritt, both entities determined that the defendants' actions were appropriate.  (*Id*.).

Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(a) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). The court must view the facts in the light most favorable to the non-moving party (here, the plaintiff) and draw all reasonable inferences in favor of that party.  *See Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1303 (11th Cir. 2009).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *See id*.  An issue is "genuine" if the record

taken as a whole could lead a rational fact finder to find for the non-moving party. *Id*.

Summary Judgment Analysis

Merritt claims that Layton's force inside the cell (elbowing, punching and kneeing him after he was restrained in handcuffs and leg irons) was cruel and unusual punishment that violated the Eighth and Fourteenth Amendments, and was a criminal battery under Fla. Stat. § 944.35, and 18 U.S.C. § 242. (Doc. 1, Compl., Statement of Claims ¶¶ 1, 6, 7, 11). Merritt claims that Stokes' and Brennan's holding him down on the floor during the beating was cruel and unusual punishment that violated the Eighth and Fourteenth Amendments, and was a criminal assault or battery under Fla. Stat. § 944.35 and 18 U.S.C. § 242. (Doc. 1, Compl., Statement of Claims ¶¶ 1, 3, 5, 10). Merritt alternatively claims that Stokes and Brennan are liable under a failure to intervene theory. Merritt also contends that Stokes' and Brennan's participation/failure to intervene violated the First Amendment because it was in retaliation for Merritt's filing grievances. (Doc. 1, Compl., Statement of Facts ¶ 2; Statement of Claims ¶¶ 2, 4).

A.    Merritt's Fourteenth Amendment Claims

Stokes, Layton and Brennan seek summary judgment on Merritt's Fourteenth Amendment claims because the claims are covered by specific constitutional

provisions (the First and Eighth Amendments), and therefore must be analyzed under those provisions instead of a substantive due process analysis. (Doc. 91, p. 8). Merritt does not address this issue in his summary judgment response. (Doc. 102).

"Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (*quoting Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Court clarified in *United States v. Lanier*, 520 U.S. 259 (1997):

> [*Graham*] does not hold that all constitutional claims relating to physically abusive government conduct must arise under either the Fourth or Eighth Amendments; rather, *Graham* simply requires that <u>if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process</u>.

*Lanier*, 520 U.S. at 272, n.7.

Merritt's excessive force and retaliation claims are "covered by" the First and Eighth Amendments. Accordingly, any substantive due process claim grounded in the same conduct must be dismissed.

B.    Merritt's Eighth Amendment Claims

Stokes, Layton and Brennan seek summary judgment based on qualified immunity.    (Doc. 91, pp. 8-13).    "Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known."  *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To be entitled to qualified immunity, the defendant must first establish that he was acting within the scope of his discretionary authority.  *Maddox v. Stephens*, 727 F.3d 1109, 1120 (11th Cir. 2013).  Once that is shown (and it is unchallenged here), the burden shifts to the plaintiff to establish that qualified immunity is not appropriate.  *Id*.  The plaintiff must demonstrate (taking all the facts in the light most favorable to him) two things: (1) the defendants violated his constitutional rights, and (2) at the time of the violation, those rights were "clearly established . . . in light of the specific context of the case, not as a broad general proposition[.]"  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled, in part, on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  The court "may decide these issues in either order, but, to survive a

qualified-immunity defense, [the plaintiff] must satisfy both showings." *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017).

The "core judicial inquiry" for an Eighth Amendment excessive-force claim in a prison setting is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citation omitted). The following factors are considered to determine if an application of force was applied maliciously and sadistically to cause harm: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986).

Stokes, Layton and Brennan argue that they are entitled to qualified immunity because they violated no clearly established constitutional right when they performed the life safety check, breached the cell door, and applied force to restrain Merritt. (Doc. 91, pp. 11-13). Merritt, however, does not challenge the life safety check, the cell door breach, the use of the shield, or the force necessary to secure him in handcuffs and leg irons. Merritt challenges the "beat[ing] and assault" that occurred inside the cell after his hands and legs were secured. Genuine disputes of

material fact exist about what happened once Merritt was secured inside the cell. Merritt states he was not combative or resistant after he was pulled inside the cell, and that once he was secured, Layton and Arrant agreed to "whip his ass" and then proceeded to carry out that agreement, while Stokes and Brennan held Merritt down and/or observed. (Doc. 1, Compl., Statement of Facts ¶¶ 11-13). Layton and Stokes state that "[u]pon being forced to the ground, Mr. Merritt was given several commands to cease his behavior, but he remained combative and refused to submit to restraints. Eventually, we were able to regain control of Mr. Merritt and restraints were placed on him. Once Mr. Merritt was secured, Mr. Merritt ceased his combative behavior, and all force ceased as a result." (Doc. 91, Ex. F, Layton Decl. ¶ 4 and Ex. G, Stokes Decl. ¶ 4).

Crediting Merritt's version of events, which the court must at this stage, Layton's and Arrant's elbowing, punching and kneeing Merritt after he was secured in hand and leg restraints was not penologically justified – because Merritt was not combative, resistant or otherwise misbehaving – and constituted excessive force. *See Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("[W]hen conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version."). The same is true of Stokes' and Brennan's holding Merritt to the floor during the beating (or failing to intervene). The law clearly establishes that even

when an initial use of force against a prisoner is constitutionally permissible, continued force is excessive after the prisoner has complied and control has been restored. *See Skrtich v. Thornton*, 280 F.3d 1295, 1301-02 (11th Cir. 2002) (affirming denial of qualified immunity on prisoner's Eighth Amendment excessive force claim where prisoner alleged that corrections officers – who went to his cell to extract him after he refused to voluntarily leave for a cell search – had punched, kicked and beat him after he was incapacitated by the use of an electronic shield, notwithstanding prisoner's acknowledgement that, in light of his history of disciplinary problems and his refusal to cooperate with the search, some degree of force was warranted); *see also Danley v. Allen*, 540 F.3d 1298, 1309 (11th Cir. 2008) ("Once a prisoner has stopped resisting there is no longer a need for force, so the use of force thereafter is disproportionate to the need."), *overruled on other grounds as recognized by Randall v. Scott*, 610 F.3d 701 (11th Cir. 2010)). The law is also clearly established that a correctional officer who is able to intervene but fails or refuses to intervene when an unprovoked beating takes place in his presence, is liable under section 1983. *See Ensley v. Soper*, 142 F.3d, 1402, 1407 (11th Cir. 1998) ("If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under section 1983." (quotations and citation omitted));

*Skrtich* at 1302 ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." (internal quotation marks and citation omitted)). Defendants Stokes, Layton and Brennan are not entitled to qualified immunity.

C.    Compensatory and Punitive Damages

Merritt seeks compensatory and punitive damages in unspecified amounts against each defendant.  Stokes, Layton and Brennan request summary judgment on the issue of damages because Merritt suffered no more than a *de minimis* physical injury.  (Doc. 91 at 13-18 (citing 42 U.S.C. § 1997e(e))).

The Prison Litigation Reform Act ("PLRA") provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ."  42 U.S.C. § 1997e(e).  The Eleventh Circuit interprets § 1997e(e) as prohibiting a prisoner from seeking compensatory and punitive damages in the absence of a physical injury that is more than *de minimis*. *Harris v. Garner*, 190 F.3d 1279, 1287-88 (11th Cir. 1999) ("*Harris I*"), *vacated in part and reinstated in relevant part on reh'g*, 216 F.3d 970 (11th Cir. 2000) ("*Harris II*") (affirming district court's dismissal, under 42 U.S.C. § 1997e(e), of prisoners' compensatory and punitive damages claims arising from prison officials' alleged

unconstitutional conduct, where prisoners alleged no physical injury arising from that conduct); *Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011) (holding that "the overall tenor of *Harris* and its progeny, when taken together, unmistakably supports" the conclusion that § 1997e(e) applies to constitutional claims and precludes the recovery of compensatory and punitive damages in the absence of the requisite physical injury).

The medical evidence in the summary judgment record establishes that Merritt had one small (1 x 1) superficial abrasion on his right shoulder blade and a "pink area – superficial dermis 4 x 5 possible firm grip" on the back of his left upper arm. (Doc. 91, Ex. E, p. 4). The video evidence of Merritt's visit to the medical department does not depict these injuries, nor does it reveal any other injuries. (Doc. 103, Ex. I, 0824 merritt# 3.pns; Doc. 103, Ex. K).[3] Merritt contends in his unverified summary judgment response that he "alleged and continues to contend that corrections officials and correctional medical officials intentionally mis-documented the extent of his injuries, and that he signed up for medical sick-call on numerous

---

[3] The video evidence does indicate that an officer took photographs of the two documented injuries while Merritt was in the medical department. (Doc. 103, Ex. K at 4:56:00 – 4:58:10). Merritt sought inspection of the photographs during discovery. In response to a third-party subpoena directing the Department of Corrections to permit inspection of any photographs of Merritt taken on August 24, 2014, the Department of Corrections submitted an affidavit from an official with the Office of the Inspector General, and an affidavit from a prison official at Santa Rosa CI, who each state that there are no photographs related to the August 24, 2014, incident at the Inspector General's Office or at Santa Rosa CI. (Doc. 89).

occasions, but was denied treatment for what he believed were broken ribs, extensive bruising, injuries to his ankles, limited range of motion that has been ongoing since the incident, and severe pain." (Doc. 102, p. 15). Merritt's summary judgment response, however, is not verified or sworn, and his verified complaint alleges only these injuries: "cuts and abrasions to his arms, legs, chest, back and stomach, severe pain and suffering, emotional and mental distress, and humiliation and degradation." (Doc. 1, Compl., Statement of Facts ¶ 15; *see also* Doc. 1, Compl., Relief Requested ¶ 1). Merritt's complaint does not allege that medical staff mis-documented, or failed to document, any injuries. Similarly, Merritt's summary judgment response provides no evidence of injuries or sick-call requests.

Viewing the facts in the light most favorable to Merritt, and drawing all reasonable inferences in his favor, no jury could reasonably find that Merritt suffered a physical injury from the August 24, 2014, use of force that is greater than *de minimis*. *See, e.g., Harris I* at 1286-87 (finding that a "dry shave" was not a physical injury that was more than *de minimis*); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (finding that a bruised ear which lasted for three days was a *de minimis* injury); *Nolin v. Isbell*, 207 F.3d 1253, 1258 n. 4 (11th Cir. 2000) (finding that bruises received during an arrest were a *de minimis* injury); *Brown v. Croce*, 967 F. Supp. 101, 104 (S.D. N.Y. 1997) (finding that two slaps to the face with no resulting

injury were *de minimis*); *see also, e.g., Mann v. McNeil*, 360 F. App'x 31, 32 (11th Cir. 2010) (finding that "the injuries that [plaintiff] complain[ed] of – including the vague injuries to his back, the scrapes and marks on his knees and legs . . . amount[ed] to *de minimis* physical injuries" thereby barring damages for mental anguish and suffering), *cert. denied*, 562 U.S. 1009 (2010); *Tate v. Rockford*, 497 F. App'x 921, 925 (11th Cir. 2012) (finding that "a laceration on [a prisoner's] forehead, several small abrasions and cuts, and a swollen right eye" are *de minimis* injuries).

Merritt may recover nominal damages if he succeeds on his constitutional claims. *See Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003) (holding that § 1997e(e) does not preclude prisoner's recovery of nominal damages, even in the absence of a more than *de minimis* physical injury, where the prisoner establishes the violation of a fundamental constitutional right); *see also Logan v. Hall*, 604 F. App'x 838, 840 (11th Cir. 2015) ("While a *pro se* plaintiff may not have requested nominal damages specifically in his complaint, in light of the liberal construction afforded *pro se* pleadings, a district court should consider whether such damages are recoverable before dismissing a complaint." (*citing Hughes*, 350 F.3d at 1162-63, *and* Fed. R. Civ. P. 54(c) (stating that, except for default judgments, "[e]very other

final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleading"))).

## DISMISSAL OF MERRITT'S CLAIMS FOR CRIMINAL ASSAULT AND BATTERY

Merritt sues Stokes, Layton and Brennan for assault and battery under Fla. Stat. § 944.35(3), and 18 U.S.C. § 242, which are criminal laws.  A private individual cannot bring an individual action under a criminal statute, as the power to prosecute criminal cases is vested exclusively in the executive branch of government.  *See Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960) ("The sections of Title 18 [§§ 241–242] may be disregarded in this suit. They are criminal in nature and provide no civil remedies."); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *see also, e.g., Butler v. Morgan*, 562 F. App'x 832, 835 (11th Cir. 2014) ("Only the United States as prosecutor can bring a criminal complaint under 18 U.S.C. §§241 and 242, the criminal analogue of 42 U.S.C. § 1983." (*citing Hanna, supra*)).  Merritt's assault and battery claims under Fla. Stat. § 944.35 and 18 U.S.C. § 242, must be dismissed.  In any event, claims for assault and battery would appear to be co-extensive with Merritt's excessive force claim.

## MERRITT'S MOTION FOR APPOINTMENT OF COUNSEL

Merritt has filed a fourth motion for appointment of counsel accompanied by an affidavit, supporting memorandum and correspondence to prospective pro bono counsel.  (Doc. 104).  Merritt asks the court to obtain volunteer counsel because (1) he is "illiterate to the law", (2) this is a complex case, (3) he was threatened with "future retaliation of more physical assaults by a couple of the Defendants", (4) his incarceration limits his ability to obtain affidavits and documents necessary to counter defendants' allegations and (5) he has mental health issues for which he takes medication.  (Doc. 104).

"A plaintiff in a civil case has no constitutional right to counsel."  *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999).  According to the *in forma pauperis* statute, 28 U.S.C. § 1915, "[t]he court may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).  The statute, however, does not allow the court to require or "appoint" an unwilling attorney to represent an indigent litigant.  *Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296 (1989) (holding that 28 U.S.C. § 1915 does not authorize a federal court to require an unwilling attorney to represent an indigent litigant in a civil case; emphasizing that Congress used the word "request" in § 1915, not the word "assign" or "appoint").

A litigant requesting counsel must make two threshold showings: (1) that he made a genuine effort to secure counsel himself and (2) that his case presents exceptional circumstances. *See Ulmer v. Chancellor*, 691 F.2d 209 (5th Cir. 1982); *Bass, supra*. Merritt's allegations do not demonstrate exceptional circumstances. This case presents a factually and legally straightforward question of whether the defendants used excessive force. Merritt obtained, through discovery and defendants' summary judgment materials, all existing evidentiary materials he requested (except for photographs of his injuries which apparently no longer exist, *see supra* note 3). Merritt does not identify anyone, other than himself and the defendants, with personal knowledge of the alleged beating, and the video evidence reveals no other witnesses. Merritt's allegations of threats by one or more defendants at Santa Rosa CI is not a present circumstance that impedes his ability to litigate this case, as Merritt has not been confined at Santa Rosa CI since May 2017. (*See* Doc. 23). By any objective standard this case is not complex, and presents, simply, credibility issues.

Accordingly, it is respectfully RECOMMENDED:

1. That plaintiff's claims against defendant Timothy Arrant be DISMISSED WITHOUT PREJUDICE under Rule 4(m) of the Federal Rules of Civil Procedure.

2.   That defendants Layton, Stokes and Brennan's motion for summary judgment (doc. 91) be GRANTED IN PART and DENIED IN PART as follows:

    a.  Summary judgment should be granted in favor of defendants Layton, Stokes and Brennan on Merritt's Fourteenth Amendment Claims.

    b.  Summary judgment be granted in favor of defendants Layton, Stokes and Brennan on the issue of compensatory and punitive damages, and Merritt's recovery should be limited to nominal damages.

    c.  Summary judgment should be denied to the extent Layton, Stokes and Brennan contend they are entitled to qualified immunity.

3.   That Merritt's claims for assault and battery under Fla. Stat. § 944.35 and 18 U.S.C. § 242, be DISMISSED WITH PREJUDICE.

4.   That this case be remanded to the undersigned for further pre-trial proceedings on Merritt's First and Eighth Amendment claims for nominal damages against defendants Layton, Stokes and Brennan.

5.   Merritt's motion for appointment of counsel (doc. 104) is DENIED WITHOUT PREJUDICE

At Pensacola, Florida this 25th day of January, 2019.


/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.